*Alexander G. Teitz,* City Solicitor, for respondents.

GEORGE A. BRIDGES *et al. vs.* THOMAS R. KERR.

MARCH 10, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

BAKER, J. This case in trespass and ejectment was tried in the superior court before a justice thereof sitting without a jury. He rendered a decision for the plaintiffs and the defendant thereafter duly prosecuted his bill of excep-

tions to this court. The only exception pressed is to such decision.

From the evidence it appears that the plaintiffs, husband and wife, are both osteopathic physicians who have retired from active practice, the latter because of impaired health. Together they own a dwelling house situated in the town of Barrington, which house contains two rented tenements, one on the first floor and the other on the second. The defendant occupies the first-floor tenement, and the present action is brought to eject him so that the plaintiffs may recover possession thereof, as they desire to occupy it themselves during the summer. The evidence also shows that the plaintiffs own a building in Providence which is used as physicians' apartments and offices, a building in Florida containing apartments, one of which is occupied by them during the winter season, and a second house in Barrington with two tenements, one on the first floor and the other on the second. However, the first-floor tenement therein has no bathroom and the house, which is leased, is on the market to be sold.

It is not questioned that the plaintiffs have owned the premises involved continuously since May 1942, and therefore they were entitled to bring this case without first obtaining from the federal rent control office for this area a certificate of eviction in accordance with pertinent housing regulations. In these circumstances they did, however, have the burden of satisfying the trial court by a fair preponderance of the evidence that they had "an immediate compelling necessity" to obtain possession of the premises for use and occupancy as a dwelling for themselves. See Federal Housing Regulations sec. 6 (a) (6).

Whether or not they met this burden is, in our opinion, a material issue in this case. The decision of the trial justice is brief and he does not with definiteness determine that issue. In deciding the case he used in part the following language: "What may be a compelling necessity to one person may not be to another. There is a great

deal of difference between a convenience and a necessity. Somehow or other, this Court feels that the plaintiff has made out a case and I am going to grant a decision for the plaintiff." Ordinarily we do not disturb the findings of fact made by a trial justice sitting without a jury unless they appear to us to be clearly wrong. However, in the present case it is our opinion that we cannot give his decision the customary weight because of its apparent speculation and indecisiveness.

No legal definition of the phrase "immediate compelling necessity," as made by a court of last resort, has been called to our attention. The phrase, however, has been interpreted by the office of price administration for the guidance of its own officials in passing upon applications for certificates of eviction. In making that interpretation the following language is used: "The criteria to determine whether an immediate compelling necessity exists should be strictly applied. Since the only difference between a proceeding under Section 6 (a) (6) and a petition under Section 6 (b) (1) is that in one case a landlord obtains immediate possession and in the other must wait for a time before the tenant is dispossessed, the need for possession must be real, immediate and urgent. 'Compelling necessity' imports more than desire or convenience. The prejudice to the landlord by imposing delay on his ability to obtain immediate occupancy must be of a character that would demonstrate very real hardship." See C.C.H. War Law Service (Rent Control) 49,383, par. 49,381, issued January 21, 1946.

While the above interpretation is not conclusive upon this court, it may properly be considered by us when we attempt to give a meaning to the phrase in question and to ascertain its intent and purpose. Unquestionably the words used are clear, forceful and in no way ambiguous and in the circumstances must be given their usual and ordinary meaning.

In the instant case, to meet the requirements of showing immediate compelling necessity, as ordinarily understood, the plaintiffs rely chiefly on the physical condition of the plaintiff wife. The only witness who testified on that issue was the plaintiff husband. No disinterested medical doctor testified that he had examined the wife or gave his opinion of her condition. The testimony submitted on this point by the husband was as follows: "Q. Who is there in your family, Doctor? A. My wife who is a heart cripple and her father who is eighty-six years old and is a bed-fast case. Q. Has the condition of Dr. Helen Bridges and Dr. Helen's father any bearing on your desire and necessity for having—A. We have to have the first floor. . . . Q. Where is Dr. Helen's father now? A. He is in Foxboro, Mass. with her sister. Q. He did make his home with you, previously? A. He did, up to October. Q. He has been with you up to—A. He wanted to give her a rest so that we could take him down there this summer. Q. Is Dr. Helen able to climb stairs? A. She is able to climb them but she shouldn't be climbing them. She is a heart case and had to give up practise, over two years ago."

Also, in cross-examination the witness testified: "Q. Now, will you explain to the Court what is your compelling necessity for having that tenement? A. Yes. I can't go into my house because that is for sale. That is leased for sale. That is, it is leased, at the present time, and it is for sale. I have got to sell that because I have been forced to retire and my wife because of her health, has been forced to retire also. Naturally, I want to turn something into money and naturally, we can't go into the big house because there is no bathroom on the first floor."

From the above testimony it seems clear that the plaintiff wife's father is at present being cared for and that his situation does not present an immediate compelling necessity, within a reasonable construction of that phrase, which would call for the eviction of the defendant from the tenement now occupied by him. Further the testimony

respecting the wife's condition is vague, general and lacking in definiteness. We do not intend to minimize in any way the apparent fact that she is suffering from some heart ailment. However, if the plaintiffs desired to use such condition as the sole basis for a claim of immediate and compelling necessity in order to justify the defendant's eviction, evidence should have been introduced as to the nature and effect of the condition.

The term "heart cripple," used by the plaintiff husband, is nowhere defined or enlarged upon in his testimony. No medical definition of such term has been brought to our attention and we do not know its meaning or the scope of the heart ailment thus referred to. Giving the plaintiffs the benefit of all reasonable inferences from the testimony, we are of the opinion that they have failed to prove by a fair preponderance of the evidence an immediate compelling necessity that would justify them in recovering possession of the tenement involved. We find, therefore, that the trial justice was clearly wrong in giving a decision for the plaintiffs and that such decision constituted error.

The defendant's exception is sustained, and the plaintiffs may appear before this court on March 19, 1948 and show cause, if any they have, why the case should not be remitted to the superior court with direction to enter judgment for the defendant.

*Lester S. Walling,* for plaintiffs.

*William H. McSoley, Jr.,* for defendant.